UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHOSHANA MINZER,

Plaintiff,

v.

LEGG MASON INC., ROBERT E. ANGELICA, CAROL ANTHONY DAVIDSON, EDWARD P. GARDEN, MICHELLE J. GOLDBERG, STEPHEN C. HOOLEY, JOHN V. MURPHY, NELSON PELTZ, ALISON A. QUIRK, and JOSEPH A. SULLIVAN,

Defendants.

Case No.______________

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Shoshana Minzer ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against Legg Mason, Inc. ("Legg Mason" or the "Company") and the members of Legg Mason's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Legg Mason will be acquired by Franklin Resources, Inc.

("Franklin") through Franklin's wholly owned subsidiary Alpha Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On February 18, 2020, Franklin and Legg Mason issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated February 17, 2020 (the "Merger Agreement") to sell Legg Mason to Franklin. Under the terms of the Merger Agreement, each Legg Mason stockholder will have the right to receive $50.00 in cash for each share of Legg Mason common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $4.5 billion.

3. On March 27, 2020, Franklin filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Legg Mason stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Legg Mason management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisors, PJT Partners LP ("PJT Partners") and J.P. Morgan Securities LLC ("J.P. Morgan"); (iii) potential conflicts of interest faced by PJT Partners and J.P. Morgan; and (iv) the background of the Proposed Transaction The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Legg Mason stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. In short, unless remedied, Legg Mason's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Legg Mason's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Legg Mason.

9. Defendant Legg Mason is incorporated in Maryland, with principal executive offices located at 100 International Drive, Baltimore, Maryland 21202. Legg Mason is a global asset management firm that operates through nine independent asset management subsidiaries. Legg Mason's common stock trades on the New York Stock Exchange under the ticker symbol "LM."

10. Defendant Robert E. Angelica ("Angelica") has been a director of the Company since February 2007.

11. Defendant Carol Anthony Davidson ("Davidson") has been a director of the Company since May 2014.

12. Defendant Edward P. Garden ("Garden") has been a director of the Company since May 2019.

13. Defendant Michelle J. Goldberg ("Goldberg") has been a director of the Company since November 2017.

14. Defendant Stephen C. Hooley ("Hooley") has been a director of the Company since July 2019.

15. Defendant John V. Murphy ("Murphy") has been Lead Independent Director since October 2014 and a director of the Company since June 2013.

16. Defendant Nelson Peltz ("Peltz") has been a director of the Company since May 2019 and previously served as a director of the Company from October 2009 until December 2014.

17. Defendant Alison A. Quirk ("Quirk") has been a director of the Company since November 2017.

18. Defendant Joseph A. Sullivan ("Sullivan") has been President, Chief Executive Officer ("CEO"), and a director of the Company since February 2013 and Chairman of the Board since October 2014.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Franklin is a publicly owned asset management holding company. Through its subsidiaries, the firm provides its services to individuals, institutions, pension plans, trusts, and partnerships. It launches equity, fixed income, balanced, and multi-asset mutual funds through its subsidiaries. The firm invests in the public equity, fixed income, and alternative markets. Franklin's shares trade on the New York Stock Exchange under the ticker symbol "BEN."

21. Merger Sub is a Maryland corporation and a direct wholly owned subsidiary of Franklin.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22. Legg Mason is a global asset management firm that operates through nine independent asset management subsidiaries. Acting through these asset management subsidiaries, each of which generally markets its products and services under its own brand name, the Company provides investment management and related products and services to institutional and individual clients, company-sponsored mutual funds and other investment vehicles. The Company offers these products and services directly and through various financial intermediaries.

23. Legg Mason was incorporated in Maryland in 1981 to serve as a holding company for its various subsidiaries. The predecessor companies to Legg Mason trace back to Legg & Co., a Maryland-based broker-dealer formed in 1899. The Company's subsequent growth occurred primarily through internal expansion and the acquisition of asset management and broker-dealer firms. In December 2005, Legg Mason completed a transaction in which it sold its primary broker-dealer businesses to concentrate on the asset management industry.

24. The Company's corporate structure combines its nine asset managers, each with

diverse perspectives and specialized expertise across asset classes and strategies, with institutional distribution capabilities at each of these asset managers and a centralized global distribution platform focusing on retail distribution. Acting through its independent investment managers, the Company provides investment management and related services to institutional and individual clients, company-sponsored investment funds and retail separately managed account programs globally. Legg Mason delivers its investment capabilities through varied products and vehicles and via multiple points of access, including directly and through various financial intermediaries. The Company's investment advisory services include discretionary and non-discretionary management of separate investment accounts in numerous investment styles for institutional and individual investors. Company investment products include proprietary mutual funds ranging from money market and other liquidity products to fixed income, equity and alternative funds managed in a wide variety of investment styles. Legg Mason also offers other domestic and offshore funds to both retail and institutional investors, privately placed real estate funds, hedge funds, and funds-of-hedge funds.

25. Legg Mason earns performance fees under certain investment advisory contracts for exceeding performance benchmarks or hurdle rates. The largest portion of its performance fees is earned based on 12-month performance periods that end in differing quarters during the year, with a portion based on quarterly performance periods. The Company also earns performance fees on alternative products that are earned at the end of varying investment periods or in multiple-year intervals. For the fiscal years ended March 31, 2019, 2018 and 2017, of the Company's $2.9 billion, $3.1 billion and $2.9 billion in total revenues, $84.9 million, $227.8 million and $108.3 million, respectively, represented performance fees.

26. On January 29, 2020, the Company reported its third quarter 2019 financial results,

including net income of $74.8 million, or $0.83 per diluted share, adjusted net income of $93.2 million, or $1.03 per diluted share, assets under management of $803.5 billion, and long-term net outflows of $1.6 billion. Defendant Sullivan commented on the results, stating:

> Legg Mason delivered delivered strong operating results in the quarter, driven by increased operating earnings aided by higher performance fees and continued expense discipline. Diversification remains a key differentiating factor for us, as inflows in alternatives and fixed income strategies partially offset equity outflows that were impacted by a large subadvisory redemption. We continue to deliver on the strategic restructuring plan we laid out last spring, with over 80% of our projected annual run rate savings target realized as of this quarter-end driving margin expansion.
>
> As we begin a new decade, we believe investments in innovation and in expanding our alternatives product offering across retail channels position us to better serve our clients' needs. We continue to leverage our distribution capabilities to enhance growth, as reinforced by strong gross sales across a variety of strategies and continue to review incremental opportunities to drive growth and long-term shareholder value.

**The Proposed Transaction**

27. On February 18, 2020, Franklin and Legg Mason issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> **San Mateo, CA, February 18, 2020** – Franklin Resources, Inc., a global investment management organization operating as Franklin Templeton, today announced that it has entered into a definitive agreement to acquire Legg Mason, Inc. for $50.00 per share of common stock in an all-cash transaction. The Company will also assume approximately $2 billion of Legg Mason's outstanding debt. The acquisition of Legg Mason and its multiple investment affiliates, which collectively manage over $806 billion in assets as of January 31, 2020, will establish Franklin Templeton as one of the world's largest independent, specialized global investment managers with a combined $1.5 trillion in assets under management (AUM) across one of the broadest ranges of high-quality investment teams in the industry. The combined footprint of the organization will significantly deepen Franklin Templeton's presence in key geographies and create an expansive investment platform that is well balanced between institutional and retail client AUM. In addition, the combined platform creates a strong separately managed account business.
>
> "This is a landmark acquisition for our organization that unlocks substantial value and growth opportunities driven by greater scale, diversity and balance across

investment strategies, distribution channels and geographies," said Greg Johnson, executive chairman of the Board of Franklin Resources, Inc. "Our complementary strengths will enhance our strategic positioning and long-term growth potential, while also delivering on our goal of creating a more balanced and diversified organization that is competitively positioned to serve more clients in more places."

Jenny Johnson, president and CEO of Franklin Templeton, said, "This acquisition will add differentiated capabilities to our existing investment strategies with modest overlap across multiple world-class affiliates, investment teams and distribution channels, bringing notable added leadership and strength in core fixed income, active equities and alternatives. We will also expand our multi-asset solutions, a key growth area for the firm amid increasing client demand for comprehensive, outcome-oriented investment solutions."

Joseph A. Sullivan, chairman and CEO of Legg Mason, said, "The incredibly strong fit between our two organizations gives me the utmost confidence that this transaction will create meaningful long-term benefits for our clients and provide our shareholders with a compelling valuation for their investment. By preserving the autonomy of each investment organization, the combination of Legg Mason and Franklin Templeton will quickly leverage our collective strengths, while minimizing the risk of disruption. Our clients will benefit from a shared vision, strong client-focused cultures, distinct investment capabilities and a broad distribution footprint in this powerful combination."

Carol Anthony "John" Davidson, lead independent director of Legg Mason, said, "Today's announcement marks the beginning of an exciting next chapter for Legg Mason, our investment affiliates and valued clients, who will benefit from a leading global asset manager with the scale to compete and win in today's markets. I am honored to have had the opportunity to serve as the lead independent director of this dynamic board, and I am truly appreciative of the hard work and dedication of the entire Legg Mason team."

Nelson Peltz, CEO and Founding Partner of Trian Fund Management, L.P. and a Legg Mason director said, "Given the dynamics of today's rapidly evolving and increasingly competitive asset management sector, I believe this transaction is compelling. In our view, it offers an attractive valuation for Legg Mason's shareholders. I believe it will also enable Legg Mason's investment affiliates to remain at the forefront of an industry where scale is increasingly vital to success and to join Franklin Templeton, an organization that I have deep respect for and confidence in."

Trian Fund Management, L.P. and funds managed by it, which collectively own approximately 4 million shares or 4.5% of the outstanding stock of Legg Mason, have entered into a voting agreement in support of the transaction.

Jenny Johnson added, "This transaction gives us significant scale, addresses strategic gaps and brings greater balance to our business, while positioning us for accelerated growth in the future. We have incredible respect and admiration for the success Legg Mason and its investment affiliates have achieved and we have structured the transaction to ensure that its affiliates have the right mix of independence and support to continue building on their strong track records. Legg Mason's investment affiliates will be able to leverage Franklin Templeton's global infrastructure and ongoing investment in technology and innovation, while clients can take comfort in the combined firm's financial strength and aligned interests."

Franklin Templeton has spent significant time with the affiliates and there is strong alignment among all parties in this transaction and shared excitement about the future of the company. James W. Hirschmann, CEO of Western Asset, a Legg Mason affiliate, said, "Western Asset is excited to be joining the Franklin Templeton family, a firm with a long and storied history of proven financial performance and a leadership team and board with decades of asset management experience who value our investment independence and organizational autonomy. Like us, Franklin Templeton understands the importance of culture, teams and core values to achieving outstanding investment results for clients."

Terrence J. Murphy, CEO of ClearBridge Investments, a Legg Mason affiliate, said, "As part of Franklin Templeton, we are confident that we will retain the strong culture that has defined our success as a recognized market leader in active equities. Their commitment to investment autonomy, augmented by the scale and reach that the combined organization will provide, will allow us to deliver for our existing clients and expand our ability to deliver our investment capabilities in new channels and regions. We are very pleased to join the team at Franklin Templeton and excited about what we can do together."

**Organizational Structure and Parent Company Integration**

With this acquisition, Franklin Templeton will preserve the autonomy of Legg Mason's affiliates, ensuring that their investment philosophies, processes and brands remain unchanged. As with any acquisition, the pending integration of Legg Mason's parent company into Franklin Templeton's, including the global distribution operations at the parent company level, will take time and only commence after careful and deliberate consideration.

Following the closing of the transaction, Jenny Johnson will continue to serve as president and CEO, and Greg Johnson will continue to serve as executive chairman of the Board of Franklin Resources, Inc. There will be no changes to the senior management teams of Legg Mason's investment affiliates. Global headquarters will remain in San Mateo, CA and the combined firm will operate as Franklin Templeton.

> After careful consideration, EnTrust Global, a Legg Mason affiliate that provides alternative investment solutions, and Franklin Templeton, jointly agreed that it was in their best interest that EnTrust repurchase its business, which will be acquired by its management at closing. EnTrust will maintain an ongoing relationship with Franklin Templeton. Jenny Johnson added, "EnTrust is an excellent business and we recognize and appreciate their desire to once again become a private company. We have appreciated their collaboration in our discussions and look forward to our ongoing relationship."
>
> **Transaction Details**
>
> The all-cash consideration of $4.5 billion will be funded from the Company's existing balance sheet cash. Franklin Templeton will also assume approximately $2 billion in Legg Mason's outstanding debt. Upon closing of the transaction, Franklin Templeton expects to maintain a robust balance sheet and considerable financial flexibility with pro forma gross debt of approximately $2.7 billion with remaining cash and investments of approximately $5.3 billion. This transaction is designed to preserve the Company's financial strength and stability with modest leverage, significant liquidity and strong cash flow to provide ongoing flexibility to invest in further growth and innovation.
>
> This transaction is expected to generate upper twenties percentage GAAP EPS accretion in Fiscal 2021 (based on street consensus earnings estimates for each company), excluding one-time charges, non-recurring and acquisition related expenses.
>
> While cost synergies have not been a strategic driver of the transaction, there are opportunities to realize efficiencies through parent company rationalization and global distribution optimization. These are expected to result in approximately $200 million in annual cost savings, net of significant growth investments Franklin Templeton expects to make in the combined business and in addition to Legg Mason's previously announced cost savings. The majority of these savings are expected to be realized within a year, following the close of the transaction, with the remaining synergies being realized over the next one to two years.
>
> The transaction has been unanimously approved by the boards of Franklin Resources, Inc. and Legg Mason, Inc. This transaction is subject to customary closing conditions, including receipt of applicable regulatory approvals and approval by Legg Mason's shareholders, and is expected to close no later than the third calendar quarter of 2020.

**Insiders' Interests in the Proposed Transaction**

28. Legg Mason insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are

conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Legg Mason.

29. Notably, Legg Mason insiders stand to reap substantial financial benefits for securing the deal with Franklin. Pursuant to the Merger Agreement, all outstanding options, restricted stock units, and performance restricted stock units will vest and convert into the right to receive cash payments.

30. Moreover, if they are terminated in connection with the Proposed Transaction, Legg Mason's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash(1) | Equity(2) | Perquisites/ Benefits(3) | Pension/ NQDC(4) | Tax Reimbursement(5) | Other(6) | Total |
|---|---|---|---|---|---|---|---|
| Joseph A. Sullivan | $500,000 | $20,503,242 | $ 14,202 | — | — | $750,000 | $21,767,444 |
| Peter H. Nachtwey | $181,731 | $ 5,844,108 | $ 15,475 | — | — | $281,250 | $ 6,322,564 |
| Thomas Merchant | $350,000 | $ 3,202,527 | $ 19,994 | — | — | $172,083 | $ 3,744,604 |
| Frances L. Cashman(7) | — | $ 1,236,748 | — | — | — | — | $ 1,236,748 |
| Thomas K. Hoops(8) | — | $ 2,828,816 | — | — | — | — | $ 2,828,816 |

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

31. The defendants caused to be filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Legg Mason's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

32. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Legg Mason management's financial projections; (ii) the data and inputs underlying the valuation analyses performed by the Company's financial advisors, PJT Partners and J.P. Morgan; (iii) potential conflicts of interest faced by PJT Partners and J.P. Morgan; and (iv) the background of the Proposed Transaction.

***Material Omissions Concerning Legg Mason's Financial Projections***

28. The Proxy Statement omits material information regarding the Company's financial projections provided by Legg Mason's management and relied upon by PJT Partners and J.P. Morgan for their financial analyses.

29. For example, the Proxy Statement sets forth that:

> On November 13, 2019, the Board held a meeting with certain members of senior management in attendance. The purpose of the meeting was to review Legg Mason management's updated projections (which we refer to as the "*November Projections*"). Legg Mason's historical practice has been to review and update its annual projections after it had results for the first six months of a fiscal year. After reviewing and approving the November Projections, the Board discussed the status of the potential transaction with Franklin.

Proxy Statement at 35. The Proxy Statement fails, however, to disclose the November Projections.

30. Additionally, the Proxy Statement fails to disclose the line items underlying Legg Mason's unlevered free cash flow figures, including: (i) net operating profit after tax; (ii) depreciation and amortization; (iii) capital expenditures; (iv) change in net working capital; and (v) tax-affected cash restructuring cost.

31. The omission of this information renders the statements in the "Background of the Merger" and "Certain Financial Projections Utilized in Connection with the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning PJT Partners' and J.P. Morgan's Financial Analyses***

33. The Proxy Statement describes PJT Partners' and J.P. Morgan's fairness opinions and the various valuation analyses performed in support of their opinions. However, the descriptions of PJT Partners' and J.P. Morgan's fairness opinions and analyses fail to include key inputs and assumptions underlying these analyses. Without this information, as described below, Legg Mason's public stockholders are unable to fully understand these analyses and, thus, are

unable to determine what weight, if any, to place on PJT Partners' and J.P. Morgan's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

34. With respect to PJT Partners' *Discounted Cash Value Analysis*, the Proxy Statement fails to disclose: (i) 2024 calendar year estimated EBITDA; (ii) the estimated terminal values of the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; and (iv) each of the Company's (a) cash, (b) debt, (c) value of equity investments, and (d) the fully diluted number of shares as of December 31, 2019, utilized by PJT Partners in the analysis.

35. With respect to PJT Partners' discounted cash flow analyses performed using consensus equity research analyst forecasts, the Proxy Statement fails to disclose: (i) the unlevered free cash flows for years 2020 through 2024; and (ii) the Company's 2024E EBITDA.

36. With respect to PJT Partners' discounted cash flow analyses performed to calculate the present value of free cash flows for the Company (adjusted to assume normalized working capital and capital expenditure levels and incremental run-rate savings based on estimates provided by the Company's management), the Proxy Statement fails to disclose: (i) the free cash flows over the projection period utilized in the analysis; and (ii) the metric utilized to derive the terminal value and quantification thereof.

37. With respect to PJT Partners' *Selected Precedent Transaction Analysis* and *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics observed for each of the selected precedent transactions and comparable companies.

38. With respect to PJT Partners' price target analyses, the Proxy Statement fails to disclose: (i) the price targets observed by PJT Partners in the analyses; and (ii) the sources thereof.

39. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) terminal year unlevered free cash flow; (ii) the estimated terminal values of the Company; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%.

40. With respect to J.P. Morgan's *Public Trading Multiples* and *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics observed for each of the selected comparable companies and precedent transactions.

41. The omission of this information renders the statements in the "Opinion of PJT Partners LP," "Opinion of J.P. Morgan Securities LLC," and "Certain Financial Projections Utilized in Connection with the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning PJT Partners' and J.P. Morgan's Potential Conflicts of Interest***

42. The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by PJT Partners and J.P. Morgan.

43. The Proxy Statement sets forth:

> PJT Partners is acting as financial advisor to the Board and the Special Committee in connection with the merger. As compensation for its services in connection with the merger, PJT Partners is entitled to receive from the Company a $5 million opinion fee which became payable when the opinion was rendered to the board and the Special Committee and is creditable against a transaction fee that is payable contingent upon the consummation of the merger, which is currently estimated, as of March 23, 2020, to be $41 million. The Company has agreed to reimburse PJT Partners for certain out-of-pocket expenses incurred in connection with the merger and to indemnify PJT Partners for certain liabilities that may arise out of the performance of such services (including the rendering of PJT Partners' opinion).
>
> During the two years preceding the date of its written opinion, PJT Partners and certain of its affiliated entities advised or were advising (i) the Company in connection with certain matters for which it has received fees (ii) creditor groups which have included an affiliate of the Company in connection with distressed situations of third parties for which PJT Partners has received or may in the future

> receive fees which have been or are expected to be paid by such third parties, and (iii) creditor groups which have included subsidiaries or affiliates of Franklin in connection with distressed situations of third parties for which PJT Partners has received or may in the future receive fees which have been or are expected to be paid by such third parties.

*Id.* at 58. The Proxy Statement, however, fails to disclose: (i) how PJT Partners' transaction fee, payable contingent upon the consummation of the Proposed Transaction, is calculated; and (ii) the details of the fees PJT Partners received from the Company and Franklin for the services provided during the two years preceding the date of its written opinion.

44. Similarly, the Proxy Statement sets forth:

> During the two year period preceding the date of its opinion, J.P. Morgan recognized fees from the Company of approximately $11 million and from Franklin of approximately $155 million unrelated to any material commercial or investment banking relationships with the Company or Franklin.

*Id.* at 64. The Proxy Statement, however, fails to disclose the nature of the services provided to the Company and Franklin.

45. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives

46. The omission of this material information renders the statements in the "Opinion of PJT Partners LP" and "Opinion of J.P. Morgan Securities LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

47. The Proxy Statement omits material information concerning the background process leading to the Proposed Transaction.

48. For example, the Proxy Statement fails to include the identities of the leaders of certain of Legg Mason's independent asset management subsidiaries, referred to in the Proxy

Statement as the "Affiliate Leaders."

49. Additionally, the Proxy Statement fails to disclose the specific details and concerns expressed to defendant Peltz from the Affiliate Leaders in their December 1, 2019 letter in opposition to the potential transaction between Legg Mason and Franklin.

50. Moreover, the Proxy Statement fails to disclose the details of the December 2, 2019 meeting to discuss the matters expressed by the Affiliate Leaders and ways to address any concerns raised by the Affiliate Leaders.

51. Furthermore, the Proxy Statement fails to disclose the identities of the senior executives of certain of Legg Mason's independent asset management subsidiaries that will receive shares of Franklin common stock with an aggregate value of up to approximately $350 million.

52. The Proxy Statement also fails to disclose the price terms of the agreement for Legg Mason, contemporaneously with the closing of the Proposed Transaction, to sell to management of EnTrust Global, an affiliate of Legg Mason, the 65% interest in EnTrust Global that presently is owned by Legg Mason and how Legg Mason stockholders benefit from this sale.

53. The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

54. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Legg Mason stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

55. Plaintiff repeats all previous allegations as if set forth in full.

56. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

57. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Company management's financial projections, the inputs and assumptions underlying PJT Partners' and J.P. Morgan's financial analyses, and PJT Partners', J.P. Morgan's potential conflicts of interest and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

58. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

59. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

60. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

**COUNT II**

**Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

61. Plaintiff repeats all previous allegations as if set forth in full.

62. The Individual Defendants acted as controlling persons of Legg Mason within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Legg Mason, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

65. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Legg Mason stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Legg Mason, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Legg Mason stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: April 8, 2020

**WEISSLAW LLP**

By ______________________

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*